UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NOEL OBOURN, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:15-CV-48 (JCH) |
| | : | |
| v. | : | |
| | : | |
| AMERICAN WELL CORPORATION, | : | JULY 10, 2015 |
|     Defendant. | : | |

**RULING RE: DEFENDANT'S MOTIONS TO DISMISS (Doc. Nos. 21, 38, 49)**

**I.     INTRODUCTION**

Plaintiff Noel Obourn brought this suit in state court alleging that her former employer breached their contract and violated the Massachusetts Wage Act (the "MWA") by failing to pay bonuses. Defendant American Well Corporation ("American Well") removed the suit to this court. Obourn has since amended her Complaint to add quasi-contract, misrepresentation, and breach of the implied covenant of good faith and fair dealing claims. See Second Am. Compl. American Well then filed a Motion to Dismiss (Doc. No. 49) the now-operative Second Amended Complaint.[1]

For the following reasons, the court denies in part and grants in part American Well's Motion.

**II.    BACKGROUND**

The Second Amended Complaint alleges the following. Obourn entered into a written employment contract (the "Contract") with American Well on May 11, 2011.

---

[1] American Well had also filed Motions to Dismiss (Doc. Nos. 21, 38) the original Complaint and the First Amended Complaint. Because the Motion to Dismiss the Second Amended Complaint includes all of the arguments made in the first two Motions to Dismiss, the court terminates as moot the first two Motions to Dismiss.

Second Am. Compl. ¶ 7; Compl. (Doc. No. 1-1), Ex. A.[2]  The Contract states that it is to be governed by Massachusetts law.  Second Am. Compl. ¶ 8.  Under the Contract, Obourn was to be employed as a "Senior Vice President Employer Sales" and American Well would compensate her with a base salary of $275,000, an annual bonus of $75,000, stock options, commissions, expense reimbursement, and other fringe benefits.  See id. ¶¶ 9–10.

The provision of the Contract relevant to this Motion – section 3(b) (the "Bonus Provision") – states:

> You will be eligible to receive an annual bonus (the "Annual Bonus") in the amount of $75,000 . . . which shall be payable within 60 days following the end of the calendar year to which it relates.  In order to earn such Annual Bonus you must: (i) be employed by the Company on the date on which the Annual Bonus is paid; and (ii) have met specific performance criteria, which will be approved by the Company's CEO and communicated to you in writing within the first 60 days of the calendar year to which the Annual Bonus will relate.  The determination of whether such milestones have been met will be determined by the Company it [sic] its sole discretion (which determination will not be unreasonably withheld).

Compl., Ex. A § 3(b).  American Well offered these annual bonuses because Obourn's base salary at her previous job was $375,000.  Second Am. Compl. ¶ 13.  Obourn relied on the Bonus Provision when signing the Contract.  See id. ¶ 14.

American Well did not provide Obourn with written performance criteria within the first 60 days of her employment, the first 60 days of 2012, the first 60 days of 2013, or the first 60 days of 2014.  See id. ¶¶ 16, 19, 23, 31.[3]  Obourn specifically requested that

---

[2] Exhibit A to the original Complaint is a copy of the Contract.  The Second Amended Complaint makes reference to, but does not attach, the Contract.  Thus, the court cites to the Exhibit A of the original Complaint.

American Well pay her an annual bonus for her work in 2011, 2012, 2013, and 2014, but American Well declined to do so. See id. ¶¶ 18, 22, 26, 29, 30.

Obourn claims that American Well's failure to provide performance critera and pay her annual bonuses gives rise to the following claims: (1) breach of contract; (2) violation of the Massachusetts Wage Act; (3) quasi-contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) misrepresentation.

## III.   STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)). The court takes the factual allegations of the complaint to be true, Hemi Grp., LLC v. City of New York, 559 U.S. 1, 5 (2010), and draws all reasonable inferences in plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

---

[3] The Second Amended Complaint does not specifically address American Well's failure to provide written performance criteria in early 2014. However, she alleges that the defendant's failure to establish performance criteria and pay her a bonus caused the damages she suffered in 2014, among the other years. The court infers from this that Obourn alleges that American Well failed to establish performance criteria in 2014. See Second Am. Compl. ¶¶ 27–29, 31–32.

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

The court may consider written instruments attached to, or incorporated by reference by, the complaint. See Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). The court need not "accept the allegations of the complaint as to how to construe such documents," but any contractual ambiguities should be resolved in favor of the plaintiff at the motion to dismiss stage. Id.

## IV.   DISCUSSION

American Well seeks to dismiss all counts of Obourn's Second Amended Complaint. The court addresses American Well's arguments in turn.

### A.   Breach of Contract

American Well argues that Obourn's breach of contract claim fails because: (1) the Contract unambiguously states that annual bonuses are discretionary; (2) "the provision regarding performance criteria is too vague to be enforced," and (3) the Contract does not provide for a prorated bonus for a partial year. See Memorandum in Support of Defendant's Motion to Dismiss (Doc. No. 50) ("Def.'s Mem. Supp.") at 4. American Well also asserts that Obourn's breach of contract claim for a 2011 bonus

fails because the Bonus Provision does not provide for prorating annual bonuses. Finally, it contends that Obourn's breach of contract claim for the 2014 bonus fails because Obourn was not employed for the first 60 days of 2015.

          1.      Whether the Annual Bonus Was Discretionary

American Well contends that, under Massachusetts law (which the parties agree applies), Obourn has no contractual right to a "performance-based, discretionary bonus." See id. Obourn argues that the annual bonus was not, in fact, entirely discretionary. See Plaintiff's Opposition to Defendant's Motion to Dismiss (Doc. No. 52) ("Pl's Mem. Opp'n") at 4–5.

Under Massachusetts law, an employee does not have a breach of contract claim for an employer's decision not to pay a bonus where the contract governing the relationship unambiguously gives the employer "sole and final decision-making authority" to determine whether the conditions triggering an employee's bonus have been met. See Weiss v. DHL Exp., Inc., 718 F.3d 39, 44–46 (1st Cir. 2013).[4] Under such a contract, the only relevant question is whether the employer, in fact, determined that the conditions for a bonus had not been met. See id. at 46.

The Contract here is not so unambiguous. Specifically, the Contract states that, in order for Obourn to earn her annual bonus, she must (1) be employed by American Wells when the bonus is to be paid and (2) "have met specific performance criteria, which will be approved by the Company's CEO and communicated to [her] in writing."

---

[4] The employee may still have a claim for the employer's breach of the implied covenant of good faith and fair dealing. Weiss, 718 F.3d at 46 ("The preclusion of his breach-of-contract claim, moreover, does not mean that Weiss had no recourse but to bow his head and accept the Committee's decision. As Weiss recognized early in the game, Massachusetts law implies in every contract a covenant of good faith and fair dealing.").

Compl., Ex. A § 3(b).  The Contract explicitly reserves the decision of whether the performance criteria are met to American Well's "sole discretion."  Id.  However, reading the Contract in Obourn's favor, it also assures that this discretion will not be "unreasonably withheld."  Id.  Unlike the contract at issue in Weiss, the Contract here limits American Well's discretion to reasonableness.  Viewing the allegations and interpreting the Contract as favorably to Obourn as is reasonable, Obourn has stated a claim for breach of contract against American Well for failing to provide her with the "specific performance criteria" against which to measure the reasonableness of its discretion and for unreasonably exercising such discretion.

2.      Whether the Bonus Provision is Sufficiently Definite

American Well next argues that the Bonus Provision's essential terms relating to the performance criteria are "too indefinite to be enforceable."  Def.'s Mem. Supp. 8.  Obourn disagrees, and so does the court.

Generally, the "essential terms" of a contract must be sufficiently definite for courts to discern the rights and obligations of the parties under the agreement.  See Cygan v. Megathlin, 326 Mass. 732, 733 (1951).  However, contracts must allow parties to bind themselves despite future uncertainty.  See Lafayette Place Associates v. Boston Redevelopment Auth., 427 Mass. 509, 517 (1998).  Thus, an agreement is enforceable as long as parties specify procedures or mechanisms to "narrow present uncertainties to rights and obligations."  Id.

The Bonus Provision of the Contract between Obourn and American Well is not so indefinite as to be unenforceable.  The Contract clearly states the amount of the annual bonus and the terms that must be satisfied in order for Obourn to earn an annual

6

bonus: employment on the date the bonus is paid and meeting the performance criteria approved by the CEO. Compl., Ex. A § 3(b). Regarding the latter, the Contract states that such criteria "will be . . . communicated" in writing. Id. (emphasis added). Contrary to American Well's argument, a reasonable interpretation of the Contract does provide how Obourn's performance will be assessed against her performance goals: according to American Well's discretion within the bounds of reasonableness. See id.

The only part of the Contract that is arguably indefinite is what the CEO-approved performance criteria would be in a given year. Any indefiniteness in this term does not render the provision unenforceable: it simply gives American Well a way to modify its incentive structure to bonus-eligible employees from year to year through the performance criteria. Put another way, it is a "mechanism[ ] to narrow present uncertainties to rights and obligations." See Lafayette Place Associates, 427 Mass. at 518. Moreover, Obourn alleges that American Well never provided her with any performance criteria. See Second Am. Compl. ¶¶ 16, 19, 23. The court will not dismiss a claim because of indefiniteness caused by American Well's alleged failure to honor the Contract.

3.   Whether the Bonus Provision Contemplates a Prorated Bonus

American Well asserts that the Contract does not provide for prorated bonuses for partial years of work.

Obourn alleges that she entered into the Contract with American Well in May 2011. Id. ¶ 7. She further alleges that she is entitled to a prorated bonus for her work in 2011 because American Well failed to provide her "written performance criteria within the first 60 days of her employment." See id. ¶ 16. These allegations fail to state a

claim because the Contract says nothing about prorating the annual bonus.  Cf. Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 8 (1st Cir. 2011) ("The provision in question does not contemplate a prorated bonus for an employee who was on the payroll at the start of a given year.").  To the contrary, the Contract states that "[i]n order to earn [the] Annual Bonus [an employee] must . . . have met specific performance criteria, which will be . . . communicated to [the employee] within the first 60 days of the calendar year to which the Annual Bonus will relate."  Compl., Ex. A § 3(b) (emphasis added).  Because the Contract unambiguously states that the performance criteria would be communicated within the first 60 days of the calendar year – not the first 60 days of employment – Obourn's theory regarding damages for a prorated bonus fails to state a claim.

   4.  Whether Obourn has Stated a Claim for the 2014 Bonus

Finally, American Well contends that Obourn is not entitled to an annual bonus for 2014 because she was not an employed by American Well for all of the first 60 days of the 2015 calendar year.

The Contract states that, in order to earn the annual bonus, the employee must be "employed by the Company on the date on which the Annual Bonus is paid" and that the annual bonus "shall be payable within 60 days following the end of the calendar year to which it relates."  Id.  Obourn asserts that she left American Well on January 8, 2015.  Pl.'s Mem. Opp'n 8–9.  Obourn states a breach of contract claim for the 2014 bonus because it may be the case that American Well issued its bonus payments before she left the company.  If so, Obourn would have been "employed by the

8

Company on the date on which the Annual Bonus is paid," Compl., Ex. A § 3(b), thus satisfying the first of the two requirements listed in the Bonus Provision.[5]

### B.   Violation of the Massachusetts Wage Act

Next, American Well argues that nonpayment of a discretionary bonus does not violate the MWA. Alternatively, it asserts that, even if the bonus in the Contract was not discretionary, its nonpayment does not violate the MWA.

The purpose of the MWA is "to prevent the unreasonable detention of wages." Boston Police Patrolmen's Ass'n, Inc. v. City of Boston, 435 Mass. 718, 720 (2002). The statute requires employers to pay its employees their earned wages weekly or bi-weekly. See Mass. Gen. Laws ch. 149, § 148. It also requires that "any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday." Id.

The MWA applies to "wages," which includes any holiday pay, vacation pay, and "definitely determined" commissions that have become "due and payable." See id. A commission is definitely determined when it is "arithmetically determinable." Weems v. Citigroup Inc., 453 Mass. 147, 151 (2009) (citing Wiedmann v. The Bradford Grp., Inc., 444 Mass. 698, 708 (2005)). Discretionary bonuses are not covered by the MWA because employers are under no obligation to award them. Id. at 154. A bonus that is

---

[5] Obourn does not specifically allege that American Well paid bonuses within the first eight days of 2015. She does, however, allege that she earned an annual bonus for 2014, see Second Am. Compl. ¶ 28, and, by reference to the Contract, that being "employed by [American Well] on the date on which the Annual Bonus is paid" is a requirement for earning an annual bonus, Compl., Ex. A §3(b). Thus, drawing all reasonable inferences in Obourn's favor, the court infers that Obourn alleges that she was employed by American Well when it paid annual bonuses from 2014.

contingent on certain criteria is not earned – and therefore not covered by the MWA – if those criteria are not met.  See Weiss, 718 F.3d at 47–48.

The case law does not directly address the issue presented here:  whether a bonus that is contingent on the employee satisfying certain criteria as determined by the employer in its reasonable judgment is covered by the MWA where the employer either refused to issue such criteria or acted unreasonably in determining that the criteria had not been satisfied.  However, a number of cases imply that such a bonus is covered by the MWA.  See id.; Sheedy v. Lehman Bros. Holdings Inc., No. CIV.A. 11-11456-RGS, 2011 WL 5519909, at *4 (D. Mass. Nov. 14, 2011) (holding that a bonus was not covered by the MWA because the contingencies had not yet been met).  For instance, the court in Weiss ruled that the bonus at issue was "never 'earned' because neither contingency had occurred."  Weiss, 718 F.3d at 48.  The court then explained that, "[b]ecause [the employer] was under no obligation to pay the bonus, [the employee] was not deprived of wages that he earned."  Id.  The implication is clear:  had the contingencies occurred, the employer would have been obligated to pay the employee, and failure to do so would have been a violation of the MWA.  This result is consistent with what appears to be the core holding of Weems: the MWA covers payments that the employer is under an obligation to make.  See Weems, 453 Mass. at 154.

Reading the Contract in Obourn's favor as much as is reasonable, the Bonus Provision makes the annual bonus contingent on meeting two elements:  (1) being employed by American Well on the date that the annual bonus is paid and (2) meeting performance criteria set by American Well, according to American Well's reasonable discretion.  Because Obourn alleges that she remained employed and American Well

10

unreasonably withheld the bonus, she has stated a claim under the MWA. While American Well, by the terms of the Contract, certainly had discretion to determine whether or not Obourn met its performance criteria, Obourn alleges that it failed to provide such criteria and acted outside of the bounds of that discretion.

American Well relies on <u>Boesel v. Swaptree, Inc.</u>, No. CIV.A. 2011-04537-H, 2013 WL 7083258 (Mass. Super. Ct. Dec. 23, 2013), for the proposition that a nondiscretionary bonus contingent on continued employment is not a "wage" under the MWA. The court in <u>Boesel</u> read <u>Weiss</u> to hold that "a bonus with the contingency of continued employment [is] not a 'wage' under the [MWA]." <u>Id.</u> at *5. This interpretation of <u>Weiss</u> is unpersuasive. In <u>Weiss</u>, the court focused on the fact that the bonus had not been earned because the contingencies had not been met. See <u>Weiss</u>, 718 F.3d at 48. The <u>Weiss</u> court did not rule that a bonus contingent on continued employment was <u>per se</u> not covered by the MWA. If the court's holding was that simple, it would have had no need to address whether the contingency at issue had occurred. See <u>id.</u> at 47–48. Indeed, it would have had no need to discuss whether the employer was obligated to pay the bonus. Because the <u>Weiss</u> court discussed – and appeared to rest its conclusion on – these issues, <u>see id.</u>, the court is not persuaded by <u>Boesel</u>'s reading of the case. Under this court's interpretation of the case law, Obourn has alleged a claim under the MWA.

      C.    <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

American Well next asserts that Obourn fails to state a claim for breach of the implied covenant of good faith and fair dealing because "she has not alleged . . . that

11

American Well terminated her employment to prevent her from obtaining the fruits of the contract." Def.'s Mem. Supp. 16.

Every contract contains an implied covenant of good faith and fair dealing. Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991). "The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (internal quotation marks omitted). A party breaches the covenant when it knowingly violates an express term of the contract in order to obtain benefits beyond that agreed to in the contract from the other party. See id. at 470–73.

Obourn alleges that American Well failed to establish performance criteria so that it would not have to pay her bonuses. See Second Am. Compl. ¶¶ 53–56. This states a claim for breach of the implied covenant of good faith and fair dealing.

American Well argues that, under Massachusetts law, a claim for breach of the implied covenant of good faith and fair dealing in the employment context is entirely limited to circumstances in which an employer terminates an at-will employee in bad faith. See Def.'s Mem. Supp. 16–17. It is true that, in cases of alleged bad-faith termination, Massachusetts courts limit liability for breach of the implied covenant of good faith and fair dealing to those situations where the employer terminated the employee to avoid paying compensation due for past services. See Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1125 (1st Cir. 1995). However, this does not necessarily require bad-faith termination for liability in every contract that relates to employment. In Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367 (2005), the case on which American Well primarily relies, the court broadly stated that, "[i]n the context of

12

employment, employers . . . have been held liable for breach of the implied covenant of good faith and fair dealing only in circumstances when an at-will employee has been terminated in bad faith." Id. at 385.  However, it then went on to assume (without deciding) a situation in which liability would result without bad faith termination of an employee: "a physician whose staff privileges have been terminated by a hospital may assert a claim of breach of the implied covenant of good faith and fair dealing against the hospital based on its alleged bad faith failure to follow its own bylaws." Id.  Such a claim would be "premised on the hospital's breach of its promise . . . to abide by its own bylaws in its conduct towards physicians." Id. at 386.  Thus, contrary to American Well's argument, Ayash acknowledges that bad faith termination of a plaintiff's employment is not required for a successful breach of the implied covenant of good faith and fair dealing claim in the context of an employment relationship.  The court denies American Well's Motion to Dismiss Obourn's claim of breach of the implied covenant of good faith and fair dealing.

      D.      Quasi-Contract

American Well seeks dismissal of Obourn's quasi-contract claims – promissory estoppel, unjust enrichment, and quantum meruit – on the ground that Obourn alleges the existence of an express, written contract that governs their relationship.  American Well alternatively asserts that the quantum meruit claim should be dismissed because, under Massachusetts law, quatum meruit is a "theory of recovery rather than a cause of action." Def.'s Mem. Supp. 18.  The court denies American's Well's Motion to Dismiss as to the first of these grounds, but it grants the Motion as to the quantum meruit claim on the second ground.

Under Massachusetts law, courts will not allow recovery under a quasi-contract theory where an express contract governs the rights and obligations between the parties.  See, e.g., Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 85 (1956) ("The law will not imply a contract where there is an existing express contract covering the same subject matter.").  Obourn concedes as much, see Pl.'s Mem. Opp'n 15 ("Should the Court determine that Plaintiff's written contract provides the relief sought, then the claims in equity will fail."), but she correctly points out that, on a motion to dismiss under Rule 12(b)(6), a plaintiff may plead quasi-contract claims as an alternative theory in the event that the contract at issue is ultimately found defective.  See Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 295 (D. Mass. 2009) (acknowledging that, under Rule 8(d) of the Federal Rules of Civil Procedure, plaintiffs may "plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if [they] only can recover under one of these theories").  Therefore, the court denies American Well's Motion to Dismiss the quasi-contract claims.

The court grants American Well's Motion to Dismiss the quantum meruit claim because, under Massachusetts law, "[q]uantum meruit is a theory of *recovery*, not a cause of action."  J.A. Sullivan Corp. v. Com., 397 Mass. 789, 793 (1986); see also Bunge Oils, Inc. v. M & F Mktg. Dev., LLC, No. CIV.A.03-11559-GAO, 2005 WL 629489, at *3 (D. Mass. Mar. 15, 2005) (dismissing quantum meruit counterclaim because it is not a separate cause of action).  This dismissal has little practical effect, however, because "the theory of quantum meruit will remain in the case as a measure of recovery, if necessary, on the unjust enrichment claim."  Bunge Oils, Inc., 2005 WL 629489, at *3.

14

E.      Misrepresentation

Finally, American Well asserts that Obourn fails to state a claim for misrepresentation because she "has not pled any misrepresentation of fact" and because she does not allege anything about American Well's actual intent.

Under Massachusetts law, a misrepresentation claim requires a plaintiff to establish "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." Bryan Corp. v. ChemWerth, Inc., 911 F. Supp. 2d 103, 109 (D. Mass. 2012) (internal quotation marks omitted).  A promissory statement can give rise to a misrepresentation claim if, at the time the promise was made, the promisor had no intention of carrying it out. Wilder v. Toyota Fin. Servs. Americas Corp., 764 F. Supp. 2d 249, 260 (D. Mass. 2011).  Such a claim exists even "without the speaker's knowledge that the statement is false if the truth is reasonably susceptible of actual knowledge." Id. at 261.

Obourn alleges that she left her previous job based on American Well's statement that it would issue specific performance criteria each year and pay her a bonus if she met the specified criteria. See Second Am. Compl. ¶¶ 41–44.  She further alleges that American Well did not issue such performance criteria and that it "was in a superior position to know the truth or falsity of the statement." Id.  Bearing in mind that "[t]he intention of the promisor not to perform [its promise] cannot be established solely by proof of its nonperformance," see Zhang v. Massachusetts Inst. of Tech., 46 Mass. App. Ct. 597, 606 (1999) (emphasis added) (quoting Restatement (Second) of Torts §

15

530(1) cmt. d (1977)), these allegations are nevertheless sufficient to state a misrepresentation claim.  In discovery, Obourn may uncover evidence that, at the time American Well made its promise, it knew or should have known that it would not issue specific performance criteria.  Accordingly, the court denies American Well's Motion as to Obourn's misrepresentation claim.

## V.     CONCLUSION

For the foregoing reasons, the court **DENIES** in part and **GRANTS** in part American Well's Motion to Dismiss (Doc. No. 49).  The court grants American Well's Motion as to the quantum meruit claim and the breach of contract claim for a prorated 2011 annual bonus.  The court otherwise denies the Motion.  The court **TERMINATES** American Well's earlier Motions to Dismiss (Doc. Nos. 21, 38) as moot.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 10th day of July, 2015.

                                                /s/ Janet C. Hall
                                                Janet C. Hall
                                                United States District Judge